FILED

2013 NOV -4 PM 3: 11

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION.

| | |
|---|---|
| **Santiago Manuel A.** <br> *Individually and on behalf of SA.* <br><br> PLAINTIFF <br><br><br> VS <br><br> **Mr. Dale Jamison.** *Teacher* <br> *(Edison Collegiate High School. Lee Campus)* <br> **Dr. Brian Botts**, *School Principal* <br> *(Edison Collegiate High School. Lee Campus)* <br> **Edison State College. Lee Campus** <br> **The School Board of Lee County** <br><br> DEFENDANTS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. <br><br><br><br> 2: 13-cv-781-FtM-29 UAM |

## PLAINTIFF'S COMPLAINT

Plaintiff Santiago Manuel A. individually and on behalf of S. A., sue the

Defendants, *"Mr. Dale Jamison",* Social Studies Teacher at Edison Collegiate

High School; *"Dr. Brian Botts"*, the school principal for the Edison Collegiate High

Charter School, Lee Campus, *"Edison State College*, Lee Campus" and *the*

*School Board of Lee County.* Plaintiff demands a trial by Jury of all issues and

for causes of actions alleges as follow:

*Page 1*

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. 1331.

2. This case concerns the application of Title VI of the Civil Rights Act of 1964, (Title VI) 42 U.S.C. 2000d, which prohibits discrimination on the basis of race, color, and national origin in program on activities receiving Federal Financial Assistance. Jurisdiction is specifically conferred on this Court by 42 U.S.C. 2000d. Equitable and other relief is sought under 42 U.S.C. 2000d.

3. Venue is proper because all causes of actions alleged herein occurred in the Edison Collegiate High Charter School. Fort Myers, Lee County, Florida and all of the parties were and/or are residents of Lee County or are doing or did business in Lee County at all time relevant herein.

4. Plaintiff has met all of the jurisdictional requirements for proceeding with this claim, by timely filling a complaint with the Edison State College, with the School District of Lee County and with the Department of Education, Office of Civil rights(OCR).

## PARTIES

5. At all times material hereto the Plaintiff is the father of S.A.

6. S.A, (hereinafter referred to as "my son"), is a 17 years old male student, Cuban - American national origin, Hispanic, and a senior student at Edison Collegiate High Charter School, Lee Campus. My son has been a model student, with no previous instances of indiscipline, excellent grades and

according to all the teacher's comments an "excellent student". My son also received the President's Educational Excellence Award in 2010, is a Member of the National Honor Society and named to the Dean List for the 2012 semester at Edison State College.

7.  At all times herein mentioned, Defendant Mr. Dale Jamison, (hereinafter referred to as the "**Teacher**") is a Social Studies Teacher at Edison Collegiate High School; a public charter high school operated by the Defendant Edison State College. According to the public records this person was previously arrested and charged with Grand Theft.

8. At all times herein mentioned, Defendant Dr. Brian Botts, (hereinafter referred to as the "**Principal**") is the principal at Edison Collegiate High School a public charter school operated by the Defendant Edison State College. According to the public records he was also the principal at Fort Myers Middle Academy.

9. At all times herein mentioned, Defendant Edison State College, (hereinafter referred to as the "**School**"), is upon information and believe, a Florida Public Body Corporation organized under the law, to operate and run the Edison Collegiate High Charter School on their campus with the School Board of Lee County's authorization.

10. At all times herein mentioned, Defendant the School Board of Lee County (hereinafter referred to as the "**Sponsor**"), is upon information and believe, a body elected by the voters of Lee County to operate and control public K-12

education within the County as part of the state system of Public Education. The "**Sponsor**" is responsible for setting the direction of the School District of Lee County and statutorily charged with the responsibility for promulgation, monitoring and adopting disciplinary policies for School District educational facilities and programs, including, upon information and believe the Parent's Guide & Code of Conduct for students "grades 6 to 12".

## FACT AND HISTORY

11. On April 25, 2012 at approximately 11:45 am, during World History class, occurred an incident between my son and his "Teacher". My son suffers from severe allergies, also was sick with cold and because of his *poor* vision uses contact lenses. According to my son's statements, he asked the "Teacher" to close one of the classroom's windows blind, because the sun light came through the window radiated directly into his eyes, his eyes watered, had nasal secretions come down from his nose, and he had no more tissues to clean his nose. Without any disruption my son got up from his seat to go to the restroom in order to get some tissues to blow his nose, clean his watered eyes, and prevent his nasal secretions to come down from his nose in front of everybody, but the "Teacher" denied him to go to the bathroom and instructed him to take his seat. Because of his emergency he went to the restroom and after my son returned to the classroom, the "Teacher" without providing to my son a description of the incident on a referral form, (as

*Page 4*

indicated in the School District of Lee County, Parent Guide Code of Conduct

for students page16, paragraphs 29-31), ordered my son to go to the

Principal's office. According to my son's statements, he frequently observed

other students leave the "Teacher's" classroom without his permission and

nothing happened to these "*non-minority*" students. Including in one occasion,

the teacher "ran after" another non- Hispanic, non-Cuban national origin and

nothing happened to the student. The names of several of these students

are("G", "B", "D", "N")

12. According to my son's statements, the school principal refused to hear his

side of the events because he had "no time to speak with a *troublemaker*".

The "Principal" instructed my son to be seated for approximately 3 hours in the

lobby area, excluded my son to participate in his scheduled English, Biology

and French classes for the remainder of the school day without timely notifying

me about my son's situation. After my son was seated for approximately 3

hours he went to the bathroom and called his mother to report his situation,

the "Principal" followed my son to the bathroom and confronted him because

he was talking on the phone. The "Principal" questioned my son, asking who

was he talking to, and saying "*I thought you were going to use the restroom.*"

He then later told my son to follow him to his office to sign the Student

Disciplinary Referral already prepared by him. According to my son's

statements he hang up his cellular phone and followed the Principal to his

office. The Principal instructed my son to sign a 10 days Off School

Suspension Disciplinary Referral. According to my son's statements because

the Student Referral contained handwritten statements that he had never

made, he refused to sign the disciplinary referral. The school "Principal" was

very rude and threatened my son to call the police to arrest him and prohibit

him to come back to the school.

13. After my wife called to me and informed my son's school situation, I called

immediately the High school and requested a meeting with the Principal for the

next date. After I arrived to my house, I confronted my son and he explained to

me his version of the events, immediately I submitted an email to the school

Principal requesting the participation of the "Teacher" for the next day meeting

14. On April 26th, 2012, approximately at 7:30 am we had a meeting with the

Principal and the Teacher. The "Teacher" admitted in front me that he denied

my son's requests to close one of the classroom's windows blind, denied my

son to go to the bathroom and referral him to the Principal's office. The

"Principal" admitted that he called my son a *troublemaker\**, that my son was

seated for approximately 3 hours waiting for him, that he excluded and

prohibited my son to participate in his French, Biology and English scheduled

classes. <u>After</u> I provided the School District of Lee County, Parent Guide &

Code of Conduct for Students grade 6-12, I demonstrated that they violated

---

*\*Troublemaker - a person who causes difficulties, distress, worry, etc, for others,*
*especially one who does so habitually as a matter of malice.* ( this definition not
correspond with my son's educational record or disciplinary behavior and I considering
that not student deserves this type of unnecessary humiliation in front other person/s)
*Page 6*

my son's rights, and the disciplinary sanctions against my son were extremely disproportional and discriminatory. Which, does not correspond with the School Board Rules; the "Principal" admitted in front of me that the disciplinary actions were "inadequate" and changed my son's "10 days OSS" for "2 days in school lunch time detention". But he added another cruel and unusual punishment against my son, he deprived my son access to the educational benefits or opportunities provided by the school, after he excluded my son to participate in his National Honor Society Inaugural Induction Ceremony, which was scheduled to be on 05/26/2012, in spite of my son already being selected for all his merits and efforts, had the invitation for the  Induction Ceremony, and in front of the principal,the teacher and his classmates my son apologized for having left the class to go to the bathroom in an <u>emergency </u>situation.

15. On the same day, I contacted the School District of Lee County to report "Principal's disproportionately sanctions that had a disparate impact on my son. Mr. McCullers, the director of Grand and Liaison Charter Schools provided to me the contact information for the Principal's supervisor.

16. Immediately, I contacted the Interim president of Academics Affairs "*Erin Harrel*", explained the incident with the Teacher and the Principal  and requested a meeting with the president of Edison State College.

17. After I contacted *Mrs. Harrel*, I was informed that, *"my son's NHS induction was postponed and will be schedule for the final school year <u>dance</u> activity"* .

18. According to the public records, on (04/30/2012), the day before of my

    scheduled meeting with the ex-President of the Edison State College " *Mr.*

    *Goddlette*"; the Interim President of Academics Affairs *Erin Harrel* sent an

    internal email to the "Principal" requesting to provide students' statements.

19. After my son compared the "*undated/unnamed*" students' statements

    collected by the "Principal" my son believed he recognized one handwritten

    statement and suggested that at least one of the alleged students was not in

    his classroom during the incident. According to the information received, my

    son's World History Class was scheduled for the fourth (4th) period and the

    alleged student had the seventh (7th)period for World History Class. (The

    school principal *and* the general counsel of Edison State College "*Mark E.*

    *Lupe",* denied me the access to necessary and important public documents,

    to corroborate if in fact the "Principal" collected statement's from the student's

    that were not present during the incident).

20. According to the public records, on May 17th, 2012 at 9:00 am the Interim

    president of Academics Affairs *"Erin Harrel"* sent another internal email to the

    Principal supporting his decision to deny my public record request.

21. On December 5th, 2012 my son suffered another adverse action in violation

    of Title VI of the Civil Rights Act of 1964. My son was denied and/or limited

    his ability to participate in or benefit from the school activity or program after

    he was not notified to participate for an extracurricular activity, specifically

*Page 8*

from the Edison State High School Math Competition.

22. On 09/25/2013, during the University of Florida Assistant Director of Admissions visited the Edison Collegiate High Charter School, the plaintiff and his son were aware for first time about the ACT and SAT examinations requirements for Universities and College admissions applications. The school failed to provide to me and to my son equally important information about my son's rights to take these important exams since he was in his Junior school year. My son has only one chance to complete these tests examination requirements with a high score before several Universities and College's deadline dates. My son also had to pay unnecessary "late" application fees to take these necessary required exams.

23. Also, on the same date, the plaintiff and his son were aware for the first time about the existence of multiple scholarships and mentoring program opportunities provided by the Lee County Public School Foundation and other organizations, since my son was in his Freshmen, sophomore and Junior school years. My son was denied and/or limited the ability to benefit, participate in or apply for multiples scholarships, and mentoring program opportunities provided by the Lee County Public School Foundation.

24. On or July 22, 2013 the plaintiff received an envelope from the Department of Education, Office For Civil Rights informing "the complainant may the right to file a private suit in Federal Court whether or not OCR finds a violation"

## STATEMENTS OF CLAIMS

### I. CAUSES OF ACTIONS AGAINST THE "TEACHER" FOR TITLE VI VIOLATION
### (Intentional Discrimination/ Disparate Treatment Theory)

25. Plaintiff alleges and incorporates herein the allegations contained in paragraphs 1 through 24 above.

26. Plaintiff believes that the **Teacher**'s conduct is discriminatory and constitutes a Violation of Title VI of the Civil Rights Act of 1964, (Title VI) 42 U.S.C. 2000d, which prohibits discrimination on the basis of race, color and national origin in programs and activities receiving Federal Financial Assistance. Specifically, Titles VI provides that: "*no one in the United States shall, on the ground of race, color or National origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance programs*".

27. The Plaintiff has established the elements of a prima facie case of Intentional Discrimination/ Disparate Treatment Theory for Racial and National Origin discrimination against my son.

   (1)My son is a member of a protected group(Hispanic, Cuban-American national origin)

   (2)My son was eligible for a Federally assisted program and was meeting the legitimate expectations of his Educator, (*my son had no past disciplinary record, and according to all his teachers' report an excellent student*)

*Page 10*

(3) My son suffered adverse actions from his Teacher (*after the "Teacher"*
*refused to close one of the classroom's windows blind, in spite of he was*
*aware that the sun light came through the window radiated directly into my*
*son's eyes, prohibited my son to go to the bathroom in an <u>emergency</u>*
*situation and deprived my son of an appropriate Education, affecting his*
*learning opportunity*).

(4) According information received, similarly situated students, who are not
members of the protected group were treated differently.The adverse action
occurred under circumstances giving rise to an inference of discrimination
and were so severe, pervasive and objectively offensive that it deprived my
son access to the learning educational benefits provided by the school.

28. The preponderance of the direct evidence demonstrates  that the "**Teacher**"
was not only aware of my son's race and national origin, he also acted, at
least in part, because of my son's race and national origin.

29. The sequence of the events leading to the decision in issue, the
preponderance of evidences and witnesses testimonies are sufficient to
demonstrate that when the "**Teacher**" granted particularly several class
students to leave his classroom without permission and they were not
referred to the principal's office and he denied my son (a Hispanic, Cuban-
American student), to close one of the classroom's window blinds, since the
sun light came through the window radiated directly into his eyes, denied him

go to the restroom in an <u>Emergency</u> situation, and sent my son, without

providing to my son a description of the incident on a referral form, to the

principal's office; which violated the Title VI of Civil Rights.

30. The investigation  brought to the public light the perception of favoritism in

the way students were treated in the "**Teacher**'s classroom. According to the

investigation, my son was in the World History class during the fourth period

during the second semester, the fourth period class  included 24 students (**16**

identified as "*White*",**2** as "*Hispanic*" and **6** " *African American*". According to

the investigation report: "*12 classmates, (one student identified as Black, one*

*student as Hispanic, one identified as more than one race and nine identified*

*as White), agreed to participate in interviews and **3** of them,* (without including

my son), <u>*perceived favoritism in class*</u> and <u>one student narrowed Teacher</u>

<u>derogatory comments against Hispanics and individuals from a specific country</u>

31. The facts alleged in the complaint are undisputed, the preponderance of the

convincing, direct, circumstantial, comparative and statistical evidences are

sufficient to demonstrate that the "**Teacher**" singled out my son and treated

him differently because of his National Origin and Race.

32. The facts alleged in the complaint and the preponderance of the evidences

demonstrates  that the "**Teacher**", in violation of Federal Regulations uses

practices that has a disparate impact on protected individuals and such

practices lacks a substantial legitimate justification.

## II. CAUSES OF ACTIONS AGAINST THE "PRINCIPAL" FOR TITLE VI VIOLATIONS
### A. Intentional Discrimination/ Disparate Treatment Theory

33. Plaintiff alleges and incorporates herein the allegations contained in paragraphs 1 through 32 above.

34. Plaintiff believes that the **Principal**'s conduct is discriminatory and constitutes a Violation of Title VI of the Civil Rights Act of 1964, (Title VI) 42 U.S.C. 2000d, which prohibits discrimination on the basis of race, color and national origin in program and activities receiving Federal Financial Assistance. Specifically, Titles VI provides that: *"no one in the United States shall, on the ground of race, color or National origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance".*

35. The Plaintiff has established the elements of a prima facie case of Intentional Discrimination/ Disparate Treatment Theory for Racial and National Origin discrimination against the "**Principal.**"

(1) My son is a member of a protected group (Hispanic, Cuban-American national origin)

(2) My son was eligible for a Federally assisted program and was meeting the legitimate expectations of his Educator,(*my son had no past disciplinary record, and according  to all the teacher' comments, an excellent student*)

(3) My son suffered <u>multiple</u> harsh adverse actions from the Defendant (*see these actions in detail on pages 16-17* )*

*Page 13*

(4) According information received, similarly situated students, who are not

members of the protected group were treated differently, the adverse

action occurred under circumstances giving rise to an inference of

discrimination and the adverse actions were so severe, pervasive and

objectively offensive that it deprived my son access to the educational

benefits or opportunities provided by the school.

36. Discrimination under Title VI is not limited to being excluded from, or denied

the benefits of a particular school program. See 42 U.S.C. 2000d; 34 C.F.R.

100.3 (a). Discriminatory actions "restrict an individual in any way in the

enjoyment of any advantage or privilege enjoyed by others receiving any

service, financial aid, or other benefit" under the school system.

37. The preponderance of the direct evidences demonstrates that the "**Principal**"

was not only aware of my son's race and national origin, he also acted, at

least in part, because of my son's race and national origin.

38. The investigation brought to the public light the historical background of the

disproportionately representation in the "**Principal**'s disciplinary sanctions

during the 2011-2012 school year and his pattern or practice of unlawful

selective disciplinary record conduct against disadvantage members of the

protected class. According to the investigation report: "*During the 2011-2012

school year, the High School enrolled 197 students, of whom 26 had self-

identified as black; 47 as Hispanic, 7 as Asian, 8 as multi-racial and 109 as*

*White*". But, according to the Edison Collegiate High Student Discipline Summary document and to the investigation all the School Principals' Disciplinary sanctions during the 2011-2012 school year were made against "minority" students, in spite of the proportion of the Caucasian students are significantly superior and greater than the amount of the Hispanic students and the African American students.

39. The investigation and the Edison Collegiate High school disciplinary record shows that, the Principal's standard for operating procedures against minority students indicates that they received more frequently disciplines than similarly situated Caucasian students. *See, e.g.* Education Department Civil Rights Investigation Resolution of Christina School District in Wilmington, Del (12/18/2012) *Discrimination in the application of discipline policies is inherently wrong and all too common…"Enforcing civil rights law is one of our most profound responsibilities, but our Office for Civil Rights also stands ready to work proactively with districts on strategies to prevent discipline-related discrimination before it occurs.(**U.S. Education Secretary "Arne Duncan"**.)*

40. The facts alleged in the complaint are undisputed, the preponderance of the convincing direct, circumstantial, comparative and statistical evidences are sufficient to demonstrate that the "Principal" used a discriminatory and disproportional harsh adverse actions against my son, a child with no past disciplinary record and an excellent student. These disproportional harsh adverse actions were so severe, pervasive and objectively offensive that it

*Page 15*

deprived my son access to the appropriate educational benefits, or opportunities provided by the school, occurred under circumstances giving rise to an inference of discrimination and cast a pall on my sons' academic reputation and good standing.

## * (3) Principal harsh adverse actions :

a. The school "**Principal**", in violation of the School District of Lee County, Parent Guide & Code of Conduct for Students, page pages 26[1] refused to hear my son' explanation and carry out a proper investigation <u>before</u> imposing any disciplinary action.

b. The school "**Principal**", in violation of the School District of Lee County, Parent Guide & Code of Conduct for Students, page 21[2] disrespected, harassed and label my son as a *troublemaker*[*]

c. The "**Principal**", adversely affected my son's learning opportunity, after he deprived my son of access to the educational benefits for his scheduled English, Biology and French educational classes for the remainder of the school day on 04/25/2012.

d. The school "**Principal**", in violation of the School District of Lee County Parent Guide & Code of Conduct for Students, page 27[3], ignored my son for approximately 3 hours without notifying me about my son's situation.

e. The school "**Principal**", in violation of the School District of Lee County Parent Guide & Code of Conduct for Students rules, *page 324  and page 365* without "substantial legitimate justification" (because exist less discriminatory alternatives that would still accomplish the school's policies) issued against my son a disproportional and harsh sanction of "*10 days OSS*".

f. The school "**Principal**", issued a cruel and unusual punishment after he deprived my son of access to the educational benefits or opportunities provided by the school. He excluded my son to participate in his National Honor Society inaugural Induction Ceremony, scheduled for 04/26/2012, in spite of my son already being selected for all his merits and efforts, had the invitation for the Inaugural Induction Ceremony and in front of the principal, the teacher and his classmates my son apologized for having left the class to go to the bathroom in an <u>emergency</u> situation. This Honor Society

*Page 16*

Inaugural Induction ceremony was very important to my son, because it is the consummation of my son's efforts, merits, and the scheduled event was in front of many guest, including but not limit to College administration, parents and students that bestows recognition honor upon the student for earning his Honor Induction.

g. The **"Principal"** in violation of the Code of Ethics for Florida Professional Educators and the School District of Lee County harassment policy committed child emotional abuse against my son, after he unnecessarily threatened my son with the police and deliberately instructed him to sign a disciplinary referral with handwritten statements that according to the evidences my son never did.

h. My son was deprived of access to the same educational benefits or opportunities provided by the school, after he was not notified to participate in school sponsored extracurricular activities, for example: *the Edison State High School Math Competition.*

j. My son was deprived of access to the educational benefits or opportunities provided by the school, after my son was not notified about the different scholarships and mentoring program opportunities provided by the Lee County Public School Foundation and other organizations, since he was in his Freshmen, Sophomore and Junior years.

k. My son was deprived of access to the educational benefits or opportunities provided by the school, after my son was not notified about the ACT and SAT examinations requirements since he was in his Junior year in order to continue his education at University level.

l. The Principal denied me an access to necessary information, to corroborate if in fact he collected statement's from the student's that were not present during the 04/25/2012 incident and reused to provide such information to the College investigator by claiming that only be released pursuant to Court order.

*Page 17*

III. *CAUSES OF ACTIONS AGAINST THE "PRINCIPAL" FOR TITLE VI VIOLATIONS*
**B. Disparate Impact or "*Disparate Effect Theory*"**

41. Plaintiff alleges and incorporates herein the allegations contained in
    paragraphs 1 through 40 above.

42. Plaintiff believes that the **Principal**'s conduct is discriminatory and
    constitutes a Violation of Title VI of the Civil Rights Act of 1964, (Title VI) 42
    U.S.C. 2000d, which prohibits discrimination on the basis of race, color and
    national origin in program and activities receiving Federal Financial
    Assistance. Specifically, Titles VI provides that: "*no one in the United States
    shall, on the ground of race, color or National origin, be excluded from
    participation in, be denied the benefits of, or be subjected to discrimination
    under any program or activity receiving Federal assistance.*

43. The Plaintiff has established the element of a prima facie case of Disparate
    Impact or "*Disparate Effect Theory*" under Title VI for Racial and National
    Origin discrimination. The "**Principal**", used  disciplinary practices that caused
    a disparate impact in groups protected by the statute, even if the actions are
    not intentionally discriminatory. Id. at 509 (quoting Elston, 997 F.2d at 1407).

44. In my  opinion, the "**Principal**" in violation of the Federal Regulations and the
    School Board Regulations uses disciplinary practices that has the effect of
    disproportionately sanctions and that has a disparate impact on my son. Such
    practice lacks a substantial legitimate justification and are a pretext for

*Page 18*

discrimination, because exist less discriminatory alternatives that would still accomplish the schools policies. *Larry P. v. Riles, 793 F.2d 969, 983 (9th Cir. 1984); New York Urban League v. New York, 71 F.3d 1031, 1038 (2d Cir. 1995); Elston, 997 F.2d at 1407.*

45. The facts alleged in the complaint are undisputed, the preponderance of the evidences are sufficient to demonstrate that the " **Principal**" refused to adopt, Ignored, and failed to comply with the governing policies, rules, and procedures enclosed in the School District of Lee County, Parent Guide & Code of Conduct for Students.

46. The "**Principal**", in violation of the Parent Guide & Code of Conduct for Students, pages 26¹ ignored my son, and refused to carry out a proper investigation, <u>BEFORE</u> imposing any disciplinary action". In violation of the Parent Guide & Code of Conduct for Students, page 21² disrespected, harassed and label my son as a *troublemaker*. The "**Principal**", adversely affected my son's learning opportunity, after he deprived my son of access to the educational benefits for his scheduled English, Biology and French educational classes for the remainder of the school day on 04/25/2012. The school "**Principal**" violated the Parent Guide & Code of Conduct for Students, page 27³, after ignoring my son for approximately 3 hours without notifying me about my son's situation. The school "**Principal**", in violation of the Parent Guide & Code of Conduct for Students rules, *page 32₄ and 36₅*

without "substantial legitimate justification" (because exist less discriminatory alternatives that would still accomplish the school policies) issued against my son a disproportional harsh sanction of "*10 days off School Suspension*". The school "**Principal**", deprived my son of access to the educational benefits or opportunities provided by the school after he excluded my son to participate in his National Honor Society inaugural Induction Ceremony, scheduled for 04/26/2013, in spite of my son already being selected for all his merits and efforts, had the invitation for the Inaugural Induction Ceremony and in front of the principal, the teacher, and his classmates my son apologized for having left the class to go to the bathroom in an <u>emergency situation</u>. The "Principal", in violation of the Code of Ethics for Florida Professional  Educators, committed child emotional abuse against my son, after he unnecessarily threatened my son with the police and deliberately instructed my son to sign a disciplinary referral with handwritten statements that my son never did. My son was deprived of access to the educational benefits or opportunities provided by the school, after he was not notified to participate in school sponsored extracurricular activities, for ex: *the Edison State High School Math Competition.* My son was also deprived of access to the educational benefits or opportunities provided by the school, after my son was not notified about the different scholarships and mentoring program opportunities provided  by the Lee County Public School Foundation and

*Page 20*

other organizations, since he was in his Freshmen, Sophomore and Junior years. My son was deprived of equal access to the educational benefits or opportunities provided by the school, after my son was not notified about the ACT and SAT examinations requirements since he was in his Junior year in order to continue his education at University level.

47. My son has the right to be treated fairly by the people, who are in position of authority as a school principal. The plaintiff demonstrated that his son, being subjected at a vulnerable point in his life suffered "substantially adverse educational consequences" as a result of the Principal's adverse actions, which resulted in depriving him of a scholastic benefit.

48. The facts alleged in the complaint are undisputed, the preponderance of the convincing direct, circumstantial, comparative and statistical evidences are sufficient to demonstrate that the " Principal" is in violation of the Sponsor and Federal regulations has engaged in a "pattern or practice" that has direct impact on protected minority students, as my son, and such practices lacks a substantial legitimate justification. The  Principal disproportional harsh adverse actions were so severe, pervasive, and objectively offensive that it deprived my son of access to the appropriate educational benefits or opportunities provided by the school, and occurred under circumstances giving rise to an inference of discrimination and cast a pall on my son's academic reputation and good standing.

---

[1] In any situation where a violation of the code of conduct for students or school's discipline plan is alleged, the principal or principal's designee shall hear the student's explanation and carry out an investigation **BEFORE** imposing any disciplinary action".

[2] Students have rights to... be treated with dignity and respect, express opinions and personal points of view, be secure in their personal privacy, reasonable and fair treatment,..

[3] Notification of out school suspension- when a student out of school suspension, the principal or principal's designee will make a good effort to **INMEDIATELY** inform the student's parents or guardian by telephone.

4 The discipline matrix specifically identifies prohibited student conduct and list the range of consequences which may be imposed for each infraction. When assigning consequences for misconduct, the principal or the principal designee shall give consideration to factors such as the nature of the infraction, the student's past disciplinary record and the severity of the problem as it pertains to the specific situation. The suggested consequences are a guide. (page 32 of Parents Guide & Code of conduct for students)

5 *Insubordination- disrespect*- first offense (minor) in High School level II (1 day ISS) Refusal or failure to follow a direction or an order from a school staff member, bus driver or any adult authority, and the use of words or acts which demean, degrade, antagonize or humiliate a person or group persons.

## IV . CAUSES OF ACTIONS AGAINST THE  EDISON STATE COLLEGE (SCHOOL)

49.Plaintiff alleges and incorporates herein the allegations contained in paragraphs 1 through 48.

*Page 22*

50. According to information and believe on October 20th 2013 the "**School**" entered into contract with the School Board of Lee County (Sponsor). Both parties agreed to cover a term of five (5) years commencing on July 1, 2010 and ending on June 30, 2015, except as otherwise.

51. According to the public records, the Sponsor granted the **School** to operate a charter school within the School District limit, and to provide educational services in accordance with the terms of a charter school contract.

52. According to the contract's terms, the **School** agreed to meet the requirements for student performance, including but not limited to comply with the Lee County School Board Policy 2.28 pages 9 to 10 (i) 1." *the charter school shall adhere to a policy of non discrimination in all educational programs, activities and employment practices. It shall strive affirmatively to provide equal opportunity for all as required by federal and state law, including but not limited to*: a)Title VI of the Civil Rights Act of 1964. .."

53. Title VI prohibits a recipient of Federal funds from discriminating on the basis of race, color, or national origin [6] . See 42 U.S.C. 2000 d. Public educational institutions that receive Federal funds are subject to this mandate 34 C.F.R. § 100.13(i) (2000) defining "recipient" to include any public "agency, institution,

---

[6] The statute provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; see also 34 C.F.R. § 100.3(a) (2000).

or organization, or other entity . . . in any State, to whom Federal financial assistance is extended"); see also id. § 100.13(g)(2)(ii). Title VI prohibits intentional violations of the statute. See Alexander v. Sandoval, 532 U.S. 275, 280-81 (2001) (citing Alexander v. Choate, 469 U.S. 287, 293 (1985).

54. Plaintiff believes that the **School** is subject to liability for "third-party conduct" because all the adverse actions occurred during school hours, on school grounds and the school "exercises substantial control over both the Principal and the context in which the known "adverse actions occurs" and "authority to take remedial action". *Davis, 526 U.S. at 644-45*

55. According to the contract's terms, the **School** agreed to meet the requirements for student performance, including but not limited to comply with the Lee County School Board Policy 2.28, page 12 (q) Selection of Personal: *(7). The charter shall not employ instructional personnel or school administrators in any position that requires direct contact with students if the applicant is ineligible for employment due to conviction of an offense within Section 1012.315, F.S.* The 1012.315, F.S. section (y) 812.014(6), relating to Theft: *"a person commit theft if he or she knowingly obtain or uses, or endeavor to obtain or to use, the property of another with intent to either temporarily or permanently (a) deprive the person of a right to the property or a benefit from the property and (b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property".*

*Page 24*

56. According to the Public records, on or about April 18, 1997, the **Teacher** was arrested, charged with "Grand Theft" and sentenced to 2 years probation,15 Sherriff's works days, pay restitution and not enter into the KB store. The plaintiff believes; the **School** not only ignored and breached the contract with the Sponsor, the School also <u>unnecessarily exposed</u> my minor son into direct contact with a person with a past criminal record.

57. The plaintiff believes, the **School** failed to adequately screen potential teachers, or ignored the results of employee screening when the results showed the teacher would be inappropriate. <u>Therefore the **School** is responsible and liable for the teacher's actions</u>.

58. According to the contract terms, the **School** agreed to meet the requirements for student performance, including but not limited to comply with the Lee County School Board Policy 2.28, page 12 (n) Student Rights, Discipline, and Safe Learning Environment and agreed to meet Article 2.0 Students (*2.9*) Discipline: *"The School agrees to maintain a safe learning environment at all times. The School shall comply with Florida state law and the School's Code of Student Conduct. <u>The School will adopt and implement the Sponsor's Code of Student Conduct</u>"*.

59. According to this article, the school "Principal" was not authorized to ignore or violate the Florida State Law and the Sponsor's Code of Student Conduct. <u>Therefore the **School** is liable and responsible for the Principal's acts</u>.

*Page 25*

60. The facts alleged in the complaint are undisputed, the preponderance of the

evidences are sufficient to demonstrate that the Plaintiff timely contacted the

"**School**", but the School acted indifferently, failed to adequately respond to

such adverse acts and failed to take corrective actions to protect the plaintiff's

son. The supreme Court has held that unless an "appropriate person" has

actual knowledge of the alleged discrimination and fails to adequately

respond to such discrimination, a damage remedy will not lie. *See Gebser v.*

*Lago Vista Indep. Sch. Dist. , 524 US  274, 290, 118, S. CT 1989 Led 2d277 (1998).*


## V. CAUSES OF ACTIONS AGAINST THE SCHOOL BOARD OF LEE COUNTY (*SPONSOR*)

61. Plaintiff alleges and incorporates herein the allegations contained in

paragraphs 1 through 60.

62. According information and believes, the **Sponsor** is responsible for setting

the direction of the School District of Lee County.

63. According to information and believes on October 20th 2013 the "School"

entered into contract with the School Board of Lee County (**Sponsor**) and

granted the "School" to operate a charter school within the School District

limit, also the **Sponsor** approved the School to provide educational services

in accordance with the terms of a charter school contract.

64. The School agreed to meet the requirements for student performance,

including but not limited to comply with the **Sponsor**'s Policy 2.28 pages 9 to

10 (i) 1." *the charter school shall adhere to a policy of non discrimination in all educational programs, activities and employment practices. It shall strive affirmatively to provide equal opportunity for all as required by federal and state law, including but not limited to: a)Title VI of the Civil Rights Act of 1964. g). Florida Educational Equity Act . h) The Florida Civil Rights Act 1992".*

65. The School agreed to meet the requirements for student performance, including but not limited to comply with the **Sponsor**'s Policy 2.28, page 12 (n) Student Rights, Discipline, and Safe Learning Environment and (q) Selection of Personal.

66. The School also agreed to meet **Sponsor**'s Policy 2.28 Article 2.0 Students (*2.9*) Discipline and to implement the Sponsor's Code of Student Conduct.

67. Pursuant the Florida Statute 1002.33 "Charter Schools" 5. 1.(a) "the **Sponsor** *shall monitor, evaluate and review the charter school in its progress towards the goals established in the charter contract.*

68. The plaintiff repeatedly reported to the School District officials, the adverse actions committed against his son. The plaintiff wrote to the District Superintendent "Dr. Nancy Graham", on several occasions, and requested a meeting to raise his concerns about violations occurring at the Edison Collegiate High School and the importance to provide all eligible students with all Federally required rights and protections. Dr. Graham did not call, responded or meet with the plaintiff.

69. The plaintiff believes, the facts alleged in the complaint are undisputed, the

preponderance of the evidences are clear and sufficient to demonstrate that the" **Sponsor"** failed to monitor, evaluate and review the Edison Collegiate High Charter school, acted indifferently and failed to adequately respond to take corrective actions to protect plaintiff's son. <u>Therefore the **Sponsor** is liable and responsible for the **School** actions</u>.

## <u>DEMAND FOR RELIEF</u>

WHEREFORE, the Plaintiff, S.M.A, respectfully requests this Court to:

A. Assume Jurisdiction of this action.

B. Conduct such additional proceeding and take such additional evidences as may be necessary to fully decide the issues, and grant such relief as the Court deems just and appropriate, including Compensatory and Punitive damages.

C. Enter and injunction prohibiting defendants from continuing adverse actions against plaintiff's son and other minority students, so that all students will receive the same equitable treatment under Federal laws and State laws, that will lead to less frequent exclusionary discipline and increased educational opportunities

D. Enjoin Defendants from maintaining any records relating with the incident and/or any disciplinary issues in my son's permanent school record.

E. Enter an order requiring the Defendants, jointly to offer plaintiff's a restitution for ACT and SAT examination requirement's late fees.

*Page 28*

F. Ordering Defendant, jointly, and severally in their individual and official capacities to pay plaintiff's son four (4) years of University expenses to any Public University in the State of Florida, for all the adverse actions against the plaintiff's son that limited his access to apply for different scholarships and mentoring program opportunities provided by the Lee County Public School Foundation and other organizations, since he could be eligible to qualify for those opportunities from his Freshmen, Sophomore and Junior years.

G. The Plaintiff hereby demands a trial by jury on all issues triable by a Jury in the above- entitled action.


Respectfully Submitted;


Santiago Manuel A.
(Plaintiff Pro-Se)

Nov 4, 2013 .
Date

1307 SE 37th Lane
Cape Coral. FL
33904

*Page 29*